McCULLOUGH & BLACKWELL v. KERVIN.

1. EXCEPTIONS which point out no specific errors are too general for consideration.

2. DEFENSE—ACTION—USURY—NOTES AND BILLS.—A defense of usury to an action on a promissory note partakes of the nature of the action, and is not an equitable defense. Following *McLaurin* v. *Hodges*, 43 S. C., 191, and *Sullivan Hardware Co.* v. *Washington*, 47 S. C., 189.

3. EVIDENCE—NOTES AND BILLS—PRACTICE.—Where parties strike a balance in a running account, and a note is given for it, no testimony is admissible as to the transactions back of the note, in a suit on the note, when the defense is a legal one. Following *Witte* v. *Weinberg*, 37 S. C., 591.

Before WATTS, J., Darlington, October, 1896. Affirmed.

Action by McCullough & Blackwell against T. J. Kervin, J. P. Kervin and J. N. Kervin on a promissory note. Judgment for plaintiff. Defendants appeal.

*Messrs. Nettles & Nettles*, for appellant, file no argument.

*Messrs. Woods* and *McFarland*, contra, cite: *Demurrer to*

*counter-claim:* 31 S. C., 16; 32 S. C., 245; Code, 194; 21 S. C., 225; 18 S. C., 305; 27 S. C., 95; Rev. Stat., 1390, 1391. *Defense not equitable:* 42 S. C., 95; 43 S. C., 191; 47 S. C., 189; 46 S. C., 147; 5 Pet., 501. *Testimony as to transactions back of note incompetent:* 37 S. C., 591.

June 26, 1897. The opinion of the Court was delivered by

Mr. Justice Gary. The plaintiffs commenced this action against the defendants on a promissory note, dated 3d February, 1894, whereby T. J. Kervin promised to pay to the order of the plaintiffs $123.40, on the 1st of December, after the date thereof, with interest after maturity at the rate of eight per cent. per annum. The defendants, J. P. Kervin and J. N. Kervin, signed their names on the back of said note before it was negotiated. Upon the trial of the case, the defendants introduced no testimony. The jury rendered a verdict in favor of the plaintiffs for $115.08. The defendants appealed, but filed no points and authorities.

The 1st, 2d, 5th, and 6th of their exceptions are as follows: "I. Because his Honor, the presiding Judge, erred in sustaining the demurrer to the counter-claim set up in the answer of the defendants. II. His Honor, the presiding Judge, erred in refusing the motion on the part of the defendants to amend the counter-claim set up in their answer. V. Because his Honor, the presiding Judge, erred in holding, 'I construe this to be a plain ordinary law action to recover on a note, and the defense is that of usury. I don't see anything that would require me to try the case sitting here as a chancellor. The only issue before the jury is whether he executed the note set forth in the complaint, and whether there was any usury charged.' VI. Because his Honor, the presiding Judge, erred in limiting the interrogatories propounded to plaintiff, C. S. McCullough, to questions touching the note sued upon and its consideration." These exceptions do not point out any

specific error on the part of the presiding Judge, and are, therefore, too general for consideration.

The third exception is as follows: "III. His Honor, the presiding Judge, erred in holding that there were no equitable issues raised by the answer of the defendants." Upon this question his Honor's remarks are set forth in the 5th exception, hereinbefore mentioned. The suit being upon a promissory note was an action at law, and the defense of usury partook of the nature of said action. This question is so conclusively settled by the cases of *McLaurin* v. *Hodges,* 43 S. C., 191, and *Sullivan Hardware Co.* v. *Washington,* 47 S. C., 189, that it is only necessary to refer to those cases for a vindication of his Honor's ruling.

The fourth exception is as follows: "IV. Because his Honor, the presiding Judge, erred in refusing to hold that the question of law involved by the equitable defense set up in defendants' answer should first be determined by the Court, and the issue of fact afterwards submitted to the jury." Having reached the conclusion that there were no equitable issues in the case, this exception presents no question for the consideration of this Court.

The seventh and eighth exceptions are as follows: "VII. Because his Honor, the presiding Judge, erred in holding 'the parties having agreed on a stated account as shown in the note, and the note having been given for it, defendants can ascertain if there was any usury in that particular transaction, but will not be permitted to go into transactions prior to that.' VIII. Because his Honor, the presiding Judge, erred in refusing to permit defendants to go behind the note sued upon and show that its consideration was entirely usurious." In order to understand fully the questions raised by these exceptions, it will be necessary to refer to the following testimony set out in the case: When C. S. McCullough, a witness for the plaintiff, was on the stand, he was asked: "Q. What was that note for $123.40 given for? A. For the balance Tom Ker-

vin owed me on two mules. Q. It was a renewal note? A. No, sir, it was the balance that he owed. Q. A renewal of the balance due on the old notes? A. I don't know whether it was a renewal or not, the transaction run on about five years. (Plaintiff objects to defendant going into those matters of accounting.) By the Court: I will allow the defendant to ask what was the consideration of the note, and then he can ask Mr. McCullough if he took the note for a greater amount than was due at that date; and after he tells you what the consideration was, I will allow you to ask whether the amount was actually due or whether there was usury. Q. What was the consideration of this note of $123.40? A. We held a note against Tom Kervin and Bob Kervin, and a mortgage on a steam engine and boiler, as security for that amount of money, and they wanted to sell the boiler, and Tom Kervin came to me and asked me to release my security, and offered J. N. Kervin and J. P. Kervin as indorsers on a note, if I would release my mortgage on the boiler; I consented to do it, and took that note in payment. Q. That note represented the amount you claim was due you on the original transaction? A. That is the amount I claim was due on the mortgage I held on the engine and boiler. I think there was an engine, I know there was a boiler. Q. At that time was there not usury in that transaction? A. In which transaction? Q. In the transaction that made up the sum of $123.40? A. He didn't owe me $123, he owed me $123 less the interest; we added the interest in the note. It was $112. We charged him ten per cent. when we made up that note. Q. The note does not provide for ten per cent.? A. No, sir. Q. The note provides for eight per cent.? A. We admit we charged ten per cent. Q. How did you get the amount to put in that note? A. He owed us $112.98 on a mortgage we held on the boiler. Q. How did you arrive at that amount? A. That is what he owed us on the mortgage. Q. Isn't that amount made up of a calculation of interest? (Objected to.) Ruled that the parties having

agreed to a stated account as shown in the note, and the note having been given for it, plaintiff can ascertain if there was any usury in that particular transaction, but will not be permitted to go into transactions prior to that." The transactions referred to in the testimony were separate and distinct, and the note sued upon was given in payment of a previous mortgage. The case of *Witte* v. *Weinberg*, 37 S. C., 591, shows that there was no error in the rulings of the presiding Judge.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.